Case 1:13-cv-00898-EJD Document 8 Filed 11/12/13 Page 1 of 12

ORIGINAL

FILED

NOV 12 2013

U.S. COURT OF
FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
(BID PROTEST)

| | |
|---|---|
| TORRES ADVANCED ENTERPRISE SOLUTIONS LLC, | |
| Plaintiff, | CIVIL ACTION NO.: \_\_\_\_\_ |
| V. | PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION |
| UNITED STATES, | |
| Defendant. | |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR EMERGENCY TEMPORARY RESTRAINING ORDER

Plaintiff, TORRES ADVANCED ENTERPRISE SOLUTIONS LLC ("TAES"), by and through its undersigned counsel, hereby submits this Memorandum of Law in Support of its Motion for Emergency Temporary Restraining Order ("TRO") pursuant to Rule 65 of the Rules of the Court of Federal Claims ("RCFC"). In support of this Motion, TAES states as follows:

### I. INTRODUCTION

The purpose of this motion is to seek *immediate injunctive relief* preventing Defendant, the UNITED STATES, ACTING BY AND THROUGH THE UNITED STATES DEPARTMENT OF DEFENSE, U.S. ARMY EXPENDITIONARY CONTRACTING COMMAND ("Army") from proceeding with the award to Global Dimensions LLC ("Global Dimensions") of a contract for detainee services at Joint Task Force, Guantanamo Bay, Cuba, pursuant to Solicitation No. W91WRZ-13-R-0002 (the "GTMO Seminar Contract"). Torres is currently the incumbent for the provision of the

services contemplated by this contract, which includes provision of seminars and library services for Guantanamo Bay ("GTMO") detainees.

The Request for Proposals ("RFP") for the GTMO Seminar Contract stated that it would be awarded to the lowest priced proposal that was deemed technically acceptable. By letter dated November 5, 2013,[1] the Army has indicated its intention to award the GTMO Seminar Contract to Global Dimensions based on its bid of $5,926,940 – a price that is barely more than half of Torres' bid.

The Court should enjoin the award of the GTMO Seminar Contract to Global Dimensions because that award is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, or alternatively because the award is not justified by the facts. 28 U.S.C. § 1491(b)(4); 5 U.S.C. §§ 706(2)(A), 706(2)(F). Global Dimensions' low bid unquestionably reflects a plan to staff the execution of the GTMO Seminar Contract by having personnel teach more than one seminar. As explained herein, the RFP failed to state whether offerors were permitted to propose staffing using that method. TAES did not configure its proposal in that manner because it believed, based on its experience as the incumbent, that approach was not feasible and would not be permitted by the government. The RFP was thus defective because it included this latent ambiguity. Alternatively, a plan to proceed in that manner reflects a misunderstanding by Global Dimensions of the technical requirements of the contract and/or a clearly erroneous conclusion by the Army that Global Dimensions' proposal was technically acceptable. In either case, the RFP thereby failed to comply with the

---

[1] The letter actually bears the date "November 5, 2012" but the reference to 2012 is indisputably a typographical error.

Competition in Contracting Act ("CICA"), 10 U.S.C. § 2304 *et seq. See also* 41 U.S.C. § 3306(a)(1) (2011) (formerly codified at 41 U.S.C. § 253a(a)(1)).

TAES requests that this Court issue a temporary restraining order and preliminary injunction enjoining the Army from proceeding with the award of the contract to Global Dimensions, and ultimately seeks a permanent injunction directing the Army to take corrective action with regard to the language of the RFP and/or to reconsider the technical sufficiency of the proposals submitted for this contract, and to make a new award based on that corrected consideration. For the reasons set forth in this memorandum, the Court should grant TAES' motion for temporary and preliminary injunctive relief.

## II. STATEMENT OF ISSUES AND FACTS

1. TAES is a company that provides a full spectrum of language, teaching and instructional services, subject matter expertise, and program support to a variety of USG agencies. TAES is the incumbent on the current contract providing the services to detainees at Guantanamo Bay that is contemplated by the GTMO Seminars Contract.

2. TAES is an interested party pursuant to 28 U.S.C. §1491(b) because TAES is the incumbent contractor currently providing the services contemplated by the GTMO Seminars Contract, and submitted a failed proposal for the award of that contract.

3. The Army is an agency of the United States Government, located at the Department of the Army, 410th Contracting Support Brigade, Regional Contracting Office – Guantanamo Bay, Cuba, APO AE 09522-9998.

4. Jurisdiction and venue are proper in this Court pursuant to 28 U.S.C. § 1491(b)(1).

5.  On or about March 5, 2013, the Army issued the RFP for the GTMO Seminars Contract, seeking proposals for a single award for the provision of services to detainees at the detention facility located at Guantanamo Bay, Cuba. See Complaint Exhibit A. TAES is the incumbent currently providing those services.

6.  The detention facility at Guantanamo Bay is used by the Army to hold individuals who are accused of participation and/or complicity with acts of international terrorism, and the operation of the facility is viewed by the government as a matter of national security.

7.  On March 22 and 27, 2013, and April 2 and 8, 2013, and May 24, 2013, the Army issued amendments to the RFP, ultimately extending the due date for proposals to June 7, 2013. See Complaint Exhibit A.

8.  Section 5.4(j) of the Performance Work Statement (see Complaint Exhibit A) stated:

> Each seminar instruction shall last between 60 and 90 minutes. Seminar instruction may be held more than once per day, 6 days a week, during normal working hours depending on classroom availability and/or demand. Maximum class size should be about 20 detainees per seminar.

9.  In addition, Amendment 4 of the RFP (see Complaint Exhibit A) included the following information, which was "provided to offerors as historical data for proposal submission purposes" and was not to included in the resulting contract:

- Weekly average for all seminars provided is as follows:

| Art | 6 |
|---|---|
| Arabic/English | 10 |
| Pashtu/English | 5 |
| Life Skills | 5 |
| Horticulture | 6 |
| Science | 5 |
| Nutrition | 5 |

| Total Hours | 42 |

10.     Neither the Performance Work Statements, nor the RFP, nor any portion of Amendment No. 4 or any other part of the solicitation provided any explanation of the number of individuals necessary to cover these obligations given the unique logistic circumstances of the Guantanamo Bay detention facility.

11.     Nevertheless, based on its familiarity with these services as the incumbent providing them, TAES configured its proposal with one individual designated to teach each of the subject matter seminars (Art, Arabic/English literacy, Pashtu/English literacy, Life Skills, Horticulture, Science, and Nutrition), and not to use any single individual for two or more seminars. See Complaint Exhibit B. TAES formed this belief based on the need to cover multiple seminars that could be scheduled (or rescheduled) during overlapping time slots, making it necessary to have separate personnel available to comply with the obligation to teach the seminars at the times that the facility deems appropriate according to discipline and security concerns. See Complaint Exhibit B.

12.     The PWS and the amendments did not specify that one individual would be now be able to teach multiple subjects, and, TAES had no reason to believe that another offeror would interpret the language of the RFP to permit the configuring of a proposal using a single individual for two or more different seminars.

13.     On or about June 7, 2013, TAES submitted a proposal in response to the RFP for the GTMO Seminars Contract using the staffing approach it believed necessary and appropriate based upon the language of the RFP and based on its experience as the incumbent providing these services. Based on this understanding of the technical

requirements of performance of the contract, TAES submitted a bid that was nearly double the awarded contract price.

14. By letter dated November 5, 2013,[2] the Army notified TAES that it had awarded the GTMO Seminars Contract to Global Dimensions, with a total contract value of $5,926,940.00.

15. During a debriefing on November 5, 2013, the Army indicated that both TAES' and Global Dimensions' proposals had been deemed technically acceptable, and that the contract was awarded to Global Dimensions because its proposal was for a lower price.

### III. LEGAL STANDARD

RCFC 65 authorizes this court to issue provisional injunctive relief, including a TRO or a preliminary injunction. In considering this request, the court must consider four factors: (1) the likelihood of success on the merits, (2) the prospect of irreparable harm to plaintiff in the absence of injunctive relief, (3) the balance of hardships, and (4) the public interest. *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993) (permanent injunction); *CC Distribs., Inc. v. United States*, 65 Fed. Cl. 813, 815 (2005) (TRO) (citing *PGBA, LLC v. United States*, 389 F.3d 1219, 1228–29 (Fed. Cir. 2004)).

### IV. ARGUMENT

TAES has made a clear showing that all four factors favor the granting of its motion for Emergency TRO and for a preliminary injunction.

---

[2] The letter reads "November 5, 2012" in error. *See* footnote 1, *supra*.

### A. There is a Substantial Likelihood that TAES Will Succeed on the Merits of its Claims.

A substantial likelihood exists that TAES will succeed on the merits because the facts are clear that the latent ambiguity in the RFP has violated CICA, 41 U.S.C. § 253. "As a general rule, offerors must be given sufficient detail in an RFP to enable them to compete intelligently and on a relatively equal basis. Specifications must be free from ambiguity, and must describe the agency's minimum needs accurately." *University Research Corp.*, 85-1 CPD ¶ 210 (1985) (*citing Worldwide Marine, Inc.*, 84-1 CPD ¶ 152 (Feb. 7, 1984)). In sustaining the protest in *University Research Corp.*, for example, the U.S. Government Accountability Office highlighted a number of problems arising from ambiguities in the RFP:

> [C]ertain . . . specifications were so indefinite as to lead to the conclusion that AID's requirements could have been set forth in a more appropriate manner. We note that the specifications did not indicate the number and content of the orientation programs that the contractor was required to conduct, other than to state in vague terms that the orientation programs would range in length from 1 to 5 days. As we believe URC rightly points out, it would be impossible for offerors to determine from this whether they were to conduct many short programs, or to conduct a lesser number of more extensive ones. Also, the RFP required the contractor to conduct seminars or other specific programs for special groups, several hours or days in length, but never established what would be a "specific" program or what would constitute a "special" group. We believe this requirement was too general since it stated only that the length of such programs might vary from several hours to several days in length, without giving offerors more detailed information as to what was expected in terms of both time and content. With respect to the participant-oriented publications required from the contractor, there was no clear indication in the solicitation as to the nature, quality, or quantity of such publications. Therefore, offerors could only guess as to what kinds of publications would meet the agency's requirements.

This Court similarly has faulted the government for a "lack of clarity" in a solicitation, where, for example, the government did not properly identify which of the

stated requirements were mandatory. *Gentex Corp. v. United States*, 58 Fed. Cl. 634, 652 (2003). In *Gentex Corp.*, the Court ultimately held that "making offerors aware of the rules of the game in which they seek to participate is fundamental to fairness and open competition," and because the "rules of the game were muddied," the procurement was rendered unfair. *Id.* (quoting *Dubinsky v. United States*, 43 Fed.Cl. 243, 259 (1999)); *Asia Pac. Airlines v. United States*, 68 Fed. Cl. 8, 20-22 (2005) (solicitation and commentary at pre-proposal bidders' conference were ambiguous as to whether schedule for mail flights among Hawaiian Islands was mandatory).

The reason why the law does not permit vague and ambiguous RFPs is that where an RFP "permits each offeror to define the specification for itself, . . . to the extent they do so differently, the offerors are not competing on an equal basis." *Interface Flooring Systems, Inc.*, 87-1 CPD ¶ 247 (Mar. 4, 1987) (*citing North American Reporting, Inc.*, 80–2 CPD ¶ 364 (1980)) (holding that "offerors must be given sufficient detail in an RFP to allow them to compete intelligently and on a relatively equal basis" and that "[t]he specifications must be free from ambiguity and describe the contracting agency's minimum needs accurately"); *see also Sea-Land Service, Inc.*, 92-2 CPD ¶ 122 (Aug. 24, 1992) (sustaining protest based on finding that "the RFP is materially defective because it fails to provide offerors with a common basis for preparing their offers").

Here, although there was no reason for TAES to recognize the ambiguity pre-award, the RFP's failure to specify whether one individual would be permitted to teach two or more seminars created a dramatically unlevel playing field among the offerors. The unfairness of these circumstances was exacerbated here because, once the offerors'

proposals were deemed technically acceptable, the sole criteria for selecting the awardee was low price.

Where, as here, the offerors were pricing different services, that situation is unfair and ultimately harms the offerors and violates the Competition in Contracting Act ("CICA") by failing to maximize competition. *Letters to the Air Force and Army concerning Valenzuela Engineering, Inc.*, 98-1 CPD ¶ 51 (Comp. Gen. Jan. 26, 1998) (explaining that "contract did not comply with the CICA requirement for full and open competition because the work statement, in that contract is so broad that it does not reasonably describe the scope of services needed, and therefore does not provide potential offerors notice of the work that will be within the scope of the resulting contract"). Indeed, "[w]here, as here, the solicitation is ambiguous with the result that offerors responded to it based on different reasonable assumptions as to what was required, the competition has been conducted on an unequal basis and the government has been deprived of the full benefits of competition. Under these circumstances, the requirement should be resolicited." *Allied Signal, Inc., Electronic Systems*, 97-1 CPD ¶ 136 (Comp. Gen. Jan. 17, 1997).

Alternatively, even if this Court were to conclude that there was no ambiguity in the RFP, the Court should conclude that there is a substantial likelihood that TAES will prevail on its assertion that the government erred in deeming the Global Dimensions offer technically acceptable. That ground is an equally strong basis to find that the government should not be permitted to proceed with the award of this contract.

The Administrative Procedures Act (APA), 5 U.S.C. §§ 551 *et seq.* and §§ 701 *et seq.*, requires that federal agency actions and decisions follow all statutorily prescribed

procedures and comply with all applicable laws. The APA also requires that a reviewing court hold unlawful and set aside any agency action that fails to comply with statutory requirements and regulations, or that was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, in violation of the APA. *5 U.S.C. § 706*. CBP's violations of CICA are arbitrary, capricious and otherwise not in accordance with law.

Given the substantial likelihood that TAES will prevail on the merits of the claims in its Complaint, the Court should grant the temporary and preliminary injunctive relief that TAES seeks.

### B.     TAES Will Suffer Irreparable Injury if the Injunction is Denied.

If the Court does not enjoin the Army immediately from proceeding with the award to Global Dimensions of the GTMO Seminars Contract, the injury to TAES will be irreparable. It is a well-settled principle of federal contracting that "a lost opportunity to compete on a level playing field for a contract[ ] has been found to prove irreparable harm," which may be protected by injunctive relief. *Serco Inc. v. U.S.*, 81 Fed. Cl. 463, 502 (Fed. Cl. 2008); *PGBA, LLC v. United States*, 57 Fed. Cl. 655, 664 (2003) (noting that "a lost opportunity to compete may constitute an irreparable harm"); *Overstreet Elec. Co., Inc. v. United States*, 47 Fed. Cl. 728, 744 (2000) (finding that the potential loss of valuable business on a contract, "deriving from a lost opportunity to compete in a fair competitive bidding process for a contract," is sufficient to prove irreparable harm). Moreover, given the national security interests in the continued safe and effective operation of the Guantanamo Bay detention facility, Global Dimensions' inability to perform the GTMO Seminars Contract on the basis on which it has proposed may likewise pose irreparable harm.

### C. The Balance of Equities Tips Decidedly in TAES' Favor.

The balance of hardships weighs in favor of TAES because if the TRO is not granted, TAES will have suffered a competitive disadvantage with other offerors in competing for the award of the CBP contract. The hardship the government would face if the TRO is granted is negligible to non-existent—it will continue to receive the services it needs until the Court may determine whether there is a need to revise the RFP and re-solicit offers – and the government will avoid the harm that may result when Global Dimensions fails to perform the contract in a satisfactory manner. Such a postponement – which is common in the procurement process – would not be a hardship on the government because it would invite fair competition among offerors, which will ultimately benefit the government. This, of course, is the purpose of CICA. Thus, the balance of equities is decidedly in favor of granting the TRO and preliminary injunction that TAES seeks.

### D. The Injunction Will Serve the Public Interest.

Public interest will also be served by this TRO and preliminary injunction because it is always in the government's best interest to ensure that the contract solicitation process is conducted on a level playing field that promotes full, open and fair competition. Ensuring that the process proceeds in that manner will help to ensure that the United States receives the best value from the contractor to which it awards the contract, as well as effective performance of the important services that are the subject of the contract. In addition, in this case, the public has an interest in the continued safe and effective operation of the Guantanamo Bay detention facility, and that interest would be

ill-served if Global Dimensions were permitted to take over the GTMO Seminars Contract and was unable to perform its obligations properly.

## CONCLUSION

For the foregoing reasons, TAES respectfully requests that this Court enter an Emergency Temporary Restraining Order and Preliminary Injunction restraining and enjoining the Army from proceeding with the award of the GTMO Seminars Contract to Global Development.

## REQUEST FOR IMMEDIATE HEARING

Plaintiff TAES respectfully requests an immediate hearing on its Motion for Emergency TRO and Preliminary Injunction.

Dated: November 12, 2013

Respectfully submitted,

/s/ Jeff Ifrah
jeff@ifrahlaw.com

David B. Deitch
ddeitch@ifrahlaw.com

IFRAH PLLC
1717 Pennsylvania Avenue, Suite 650
Washington, D.C. 20006
Telephone: (202) 524-4140
Facsimile: (202) 524-4141

Attorneys for Plaintiff,
*Torres Advanced Enterprise Solutions, LLC*